UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| the STATE OF FLORIDA, | ) | |
| ex rel. MERIA BROADNAX | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) Case No. 8:13-CV-2724-JDW-MAP | |
| | ) | |
| SAND LAKE CANCER CENTER, P.A., | ) | |
| and VINICIO HERNANDEZ, M.D., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**EXPERT REPORT OF MICHELLE SMITH FLOWERS**

May 11, 2018

## OPINION OF MICHELLE SMITH FLOWERS

Re:    Broadnax vs. Sand Lake Cancer Center, P.A. and Vinicio Hernandez, M.D.

### I.    SCOPE OF EXAMINATION

I am an expert in Billing and Coding for oncology medication. I have been engaged by A. Brian Phillips, Esq., counsel for Sand Lake Cancer Center, P.A., (SLCC), and Vinicio Hernandez, MD. I was asked for my opinion on the alleged overbilling of oncology medication by Sand Lake Cancer Center, P.A., between July 2009 and November 2013. I was specifically asked to address certain conclusions expressed in the reports of Constantijn Panis, Ph.D, and William Parker, RPh and to review records relevant to those reports. My opinion is focused solely on the accuracy of claims submitted to insurance carriers for units of drugs billed during the foregoing time period. I will not address economic, medical, or other non-billing issues.

### II.    QUALIFICATIONS

I have been involved in the billing of oncology medication and followed the related guidelines and laws for more than thirty years.  My professional experience includes:

1. 1981- 2003
   Manager/Administrator of out-patient community based Oncology Practice, Gainesville, Florida
       Responsibilities: hiring, firing, coding and billing, working with healthcare insurers on policies affecting access to care

2. 1990 – present
   Organized/developed state manager's oncology organization, Oncology Managers of Florida, Dedicated to the education of those who work in community based cancer practices. Served as President, Vice-President and Reimbursement/Legislative    Policy    Chair.    Currently    President, Reimbursement/Legislative Policy Chair. Work closely with Florida insurance carriers on policies that affect patient access to care, as well at working with our state Legislative representatives on healthcare bills that can potentially negatively impact our cancer patients.

3. 2003-present, CEO/owner MSF Consulting. Work with oncology provider practices focusing on coding/billing, reimbursement, chart audits, practice management skills, drug policies affecting reimbursement

4. 1998 - University of Central Florida Healthcare Management Certification Program

5. AAPC – American Academy of Professional Coders

**Career Related Activities**
Advisory Board Member:
Amgen Oncology
Lilly Oncology
Pharmion
MGI Pharma
Sandoz Pharmaceutical
Orthobiotec

Speaker - Oncology Managers of Florida – 2 conferences/year
  Focusing on coding /billing, carrier coverage policies, legislative healthcare initiatives

2008-2009 - CEO – Oncology Billing Solutions
  Billing company for oncology private out-patient practices

2013 - AHCA – Responsible for helping to coordinate efforts within Medicaid on issues involving oncology patients insured under the Share of Cost product

2007 - Served as liaison representing Florida oncology providers working on issues of policy and reimbursement with First Coast Service Options (FCSO), Florida Department of Health (DOH), Center for Medicare and Medicaid Services (CMS) during CMS Recovery Audit Contractor (RAC) demonstration project impacting claims processing for oncology providers

My resume is attached hereto as <u>Appendix A</u>.

III.   <u>COMPENSATION</u>

   I am being compensated at the rate of $250.00 per hour and have thus far spent approximately 100 hours on this matter.

## IV.   PRIOR CASES

I have never testified as an expert or provided expert opinions in any lawsuit.

## V.   BACKGROUND

The relator alleges that Sand Lake Cancer Center, P.A. and Dr. Vinicio Hernandez knowingly and fraudulently billed multiple payors of oncology medications. It is also alleged that Sand Lake Cancer Center billed and, was subsequently reimbursed for drug units in excess of what was administered to their patients. I was asked to review medical records and other data and express my opinion as to whether the foregoing allegations can be substantiated.

## VI.   RECORD/DATA REVIEWED/CONSDERED

I have received electronic data files containing patient medical records for months between July 2009 and November 2013, including physician visit notes, dose administration records from SLCC's Aria electronic medical records, Nucleus drug dispensing cabinet activity records, and insurance billing records. In addition, I have reviewed First Coast Service Options (Medicare) excel spread sheet of claims filed, as well as opposing counsel's experts' reports. The data and information I reviewed and considered includes:

1. Patient medical records, Dates of service included: April, May, July and August 2009, July, August and November 2011, and November 2013

2. Aria medication dosing records to correspond with above noted medical records

3. Excel spread sheets
   Medicare (FCSO) claims processing record (2009-2016)
   SLCC patient billing data for medical records noted above (total of 14 patients)
   Drug administration data reports – Aria
   Oncology Supply Nucleus drug cabinet activity records

4. Expert Opinion
   Constantijn Panis, Ph.D
   William Parker, RPh

5. Medicare Claims Processing Manual
   Chapter 17 - Drugs and Biologicals Table of Contents *(Rev. 3932, 12-08-17)*

6. Department of Health and Human Services/
   Medicare Learning Network
   MLN Matters –SE1316 – dose versus units billed

7. Billing/Coding Policy Guidelines:
   First Coast Service Options (FCSO)
   Aetna
   Blue Cross Blue Shield
   Cigna

Detailed descriptions, file names and websites, where applicable, for the foregoing resources are attached hereto as Appendix B.

VII.   FRAMEWORK FOR ANALYSIS/PROCESS OF REVIEW

The Center for Medicare and Medicaid Services (CMS) determines both the HCPCS (healthcare common procedure code, J codes) as well as descriptor and billing units for each drug. Therefore, an oncology physician practice billing for drugs administered on site, is obligated to bill in accordance with the established and regulated coding system. Regulations ask for the most efficient methods to be utilized when administering medications that allow for cost containment as well as patient safety.

Billing units are entered in multiples of the units shown in the HCPCS narrative description. For example, with the drug Fluorouracil, if the description for the code is 500 mg, and a total of 1575 mgs are provided, units are shown as 4;

HCPCS – J9190   Fluorouracil (5FU) 500mg
Dose    - 1575 mg
Units   - 4

When billing for single use or multi-use drugs, you will use the smallest vial size to accommodate the dosing needs. Providers are encouraged to administer drugs and biologicals to patients in such a way that they can use them most efficiently and in a clinically appropriate manner. Ordering drugs in a manner that will meet their individual practice financial needs allows for the most efficient utilization of drugs.

Drugs are billed in multiples of the dosage specified in the HCPCS code long descriptor. If the drug dose used in the care of a patient is not a multiple of the HCPCS code dosage descriptor, the provider rounds to the next highest unit based on the HCPCS long descriptor for the code in order to report the dose provided.

If the full dosage provided is less than the dosage for the HCPCS code descriptor specifying the minimum dosage for the drug, the provider reports one unit of the HCPCS code for the minimum dosage amount.

<u>To complete the objective for which I was retained, I engaged in the following processes:</u>

I reviewed the electronic physician medical record for each patient visit, and checked for documentation to confirm patient's chemotherapy treatment regimen. I checked patient stats (height and weight used to calculate Body Surface Area) (BSA- is used to calculate drug dosing). I confirmed BSA in the progress note with an on-line calculator to check for discrepancies, if any. None were found in any of the fourteen (14) patient records.

The body surface area (BSA) is the measured surface of a human body. It is considered as a better measure of metabolic mass. It can be calculated using various different formulas. However, the result from each formula varies slightly.

* In my analysis, I used the on-line calculator for the Du Bois formula for calculating medication dosing. All other formulas were checked as well (Mosteller, Boyd, Gehan & George and Haycock) for comparison and to confirm physician calculations.

I checked the drug amounts (mgs/kg) administered to the patient as noted on the dosing record from the nucleus cabinet against the on-line medication dosing calculator for accuracy. Each patient drug dosing record from the Nucleus cabinet was checked against the physician visit record to check and confirm that the appropriate drugs were administered.

The final step in the process was to compare the drug administration record against the spread sheet for accuracy of units billed. All patient billing records were double checked against and compared to the patient's medication dosing record for each date of service provided.

## VIII.  <u>SUMMARY OF REVIEW/OPINIONS</u>

My review focused on alleged billing inconsistencies and did not consist of an in depth review of the inventory management system. In reviewing Dr. Panis' opinion, he alleges that Sand Lake Cancer Center "systematically reduced the amount of cancer drugs that patients received while billing for the full dosage." (Page 3). Nothing in my review of SLCC's billing records supports his findings and the billing records contradict those findings when compared to the actual units billed for each claim. Dr. Panis bases a portion of his finding on a review of five patient treatments during this period. He states that "some wastage was reported but, in the light of the allegations of the Relator, a likely explanation of inventory discrepancy is that all five patients received reduced doses." (Page 10).  I believe that Dr. Panis' conclusions are speculation and conjecture and involve extrapolations that cannot be confirmed when compared to the actual billing reports. His opinions are certainly not supported by sufficient reliable data to be acceptable to a payor of oncology medication.

Mr. Parker's opinion draws a conclusion regarding the billing of Single Use Vials of drugs and, that Sand Lake Cancer Center "routinely double billed to the government by rounding up the amounts used of such drugs when calculating billing units, all the while intending to use the residual amounts in future IV mixes." (Page 15). This is a conclusion he has drawn from the Relator's allegation and he illustrates this by conjecture, as there is insufficient proof from billing records submitted. He states "if a 100mg single use vial was split between two patients, each receiving 50mg, then the government was billed for 100mg of drug for each patient, totaling 200mg rather than the 100mg that was accounted for." (Page 15). I found nothing in my analysis of the billing records or dosing record to indicate this occurred. I believe that Mr. Parker's conclusions are speculation and conjecture and involve extrapolations that cannot be confirmed when compared to the actual billing reports.  His opinions are certainly not supported by sufficient reliable data to be acceptable to a payor of oncology medication.

Certainly, every medical practice makes mistakes in billing.  The possibility of human error in the billing process always exists.  But there is no support for the purely speculative opinions of Dr. Panis and Mr. Parker who aver that Sand Lake Cancer Center was involved in a flagrant and persistent pattern of overbilling. Based on the data I reviewed and considered, Sand Lake Cancer Center followed the appropriate Billing and Coding procedures and did not bill more than they were allowed by law to bill. More particularly, in my opinion, Sand Lake Cancer Center, P.A, billed for drug units based on required carrier policies and regulations,

including Medicare and Medicaid and, are accurate and appropriate for each drug administration noted by my review of all records.

This report is based on my review of data available to me and the time constraints that I had to review it. In addition, the reports of Dr. Panis and Mr. Parker are incomplete and indicate their work is ongoing. Thus, assuming I am called to testify, I anticipate I will also do further work and consider additional information. I reserve the right to revise my conclusions if further facts and/or issues are brought to my attention.

MICHELLE SMITH FLOWERS

# APPENDIX A

## Michelle Smith Flowers
**P.O. Box 358440**
**Gainesville, Florida 32635-8440**

msmithgvl@aol.com                                                    (352)-332-7917

### Highlight of Qualifications:
- Managed medical Oncology Practice over 20 years; mastering coding reimbursement
- Competent, reliable, and committed professional with a proven record of success in assuming increased levels   of responsibility.
- Exceptionally organized, and resourceful, with a wide range of computer skills
- Reliable and adaptable; learn new systems quickly, and take initiative
- Excellent problem- solving and verbal communication skills.

### Experience:
**Consultant to Oncology Practices**                                    2003-present
Consulting to private practices with a focus toward reimbursement, coding, chart audits and Practice management skills. Working with carriers targeting new drugs on policies affecting access to care.

**Practice Manager for Medical Oncologist**                            1981-2003
Charles L. Cusumano, M.D., P.A.                          Gainesville, Florida
Managed a medical oncology office with responsibilities ranging from controlling and administering accounts receivable, monitoring billing, financial counseling, negotiating with insurance carriers, reviewing contracts to supervising and training staff. Supervise and maintain office computer system. Coordinate and monitor scheduled software upgrades as well as changes to the CPT and ICD9 coding system.

**Oncology Managers of Florida**                                        1990-present
Founded and developed OMF, a state oncology manager organization, to develop, design, and implement programs that assist administrators, physicians and patients.

Positions held: President, Vice President, Chairperson of Legislative Committee, Membership Chairperson and 17 year Board Member.
Currently serve as President, Reimbursement Liaison to Florida Medicare, Blue Cross Blue Shield as well as other health insurers.  Membership and Website Chairs.

Official Liaison for OMF and Florida Society Of Clinical Oncology (FLASCO) in dealing with Florida Medicare Carrier and Blue Cross Blue Shield of Florida.
OMF Lobbyist to Federal and State Legislatures regarding cancer care President's Council Elite Volunteer for the National Patient Advocate Foundation
Serve as committee member on ACCC Government Affairs Committee FCSO Provider Education Committee Member

**Career Related Activities**

Advisory Board Member for Amgen Oncology
Advisory Board Member for Eli Lilly Oncology
Speaker/Advisory Board Member for MGI Pharma
Speaker/Consultant for Pharmion
Novartis Consultant to medical oncology practices.
Orthobiotech Pharmaceutical's Reimbursement Bureau speaker
Speaker for OMF and FLASCO
Advisory Board Member for Celgene
Dendreon Speaker's Bureau

Helped design and present six (6) programs throughout the state for physicians and office staff

2003 – Present, Reimbursement/Legislative Liaison for Oncology to healthcare carriers
2005 – Designed and presented presentations for practices on new CPT codes
2005 – Present, Speaker for Oncology Managers of Florida
2007 -  Served as liaison for oncology with FCSO, DOH, CMS during RAC Demonstration Project
2008 – Representative for Oncology practices to the Department of Health Re: Pedigree Law of 2006.
2008 -  Design and present presentation on behalf of Medicare (FCSO) at OMF conference
2008 -  Serve as a representative for oncology providers to The Department of Health with the development and implementation of the Healthcare Clinic Establishment Permit effective in 2009.
2008 – CEO, Oncology Billing Solutions, Inc
2009 – Present, work with local legislative representatives to assist constituents with healthcare issues involving access to care
2013 -  Responsible for coordinating departments within the state Medicaid program to Present educational webinars on Share of Cost issues

**Education**

University of Central Florida, Healthcare Management Certification Program 1998

**Professional Association:**

NOSN - National Society of Oncology Administrators
ACS  -  American Cancer Society
ASCO - American Society of Clinical Oncology Advisory Board of State Affiliates
ACCC - Association of Community Cancer Centers
MGMA - Medical Group Managers Association
FLASCO-Associate Member
NPAF/PAF – National Patient Advocate Foundation, Elite President's Council, State Policy Liaison
POE-AG – Florid Medicare Provider Outreach and Education Advisory Group
National Coalition for Cancer Survivorship
AAPC – American Academy of Professional Coder

# APPENDIX B

## Records and Resources Reviewed

| Description | File Name or Website (if applicable) |
|---|---|
| Expert Opinion of Constantijn Panis, Ph.D | |
| Expert Opinion of William Parker, RPh | |
| Data produced by First Coast Service Options reflecting J-code claims submitted by SLCC for dates of service between January 2008 and July 2017 | FCSO  wr13808 output.xlsx |
| Data from SLCC's EMR system (Aria) reflecting administrations of vial medications from March 2009 to December 2013 | SLCCC001844_CONFIDENTIAL.xlsx |
| Data from SLCC's practice management system (Intergy) reflecting claims made and payments received for vial medication administrations from January 2009 to December 2013 | SLCCC001845_CONFIDENTIAL.xlsx |
| Subset of SLCC patient billing data relating to patients referenced in the reports by Dr. Panis and Mr. Parker | |
| Data produced by Oncology Supply pertaining to transactions recorded by SLCC's Nucleus system between March 2009 and April 2014 | ABC-SAN-013681.xlsx |
| Data produced by Oncology Supply pertaining to drug purchases by SLCC between January 2009 and March 2014 | ABC-SAN-000282.xlsx |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient AF | SLCC002005.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient BA | SLCC002006.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient DB | SLCC002007.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient EP | SLCC002008.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient FM | SLCC002009.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient JL | SLCC002010.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient JS | SLCC002011.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient KN | SLCC002012.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient MS | SLCC002013.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient RD | SLCC002014.pdf |

| | |
|---|---|
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient RS | SLCC002015.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient RA | SLCC002016.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient SE | SLCC002017.pdf |
| Progress notes, Dose Recordings, and Flowsheets related to certain dates of treatment for patient SH | SLCC002018.pdf |
| Medicare Claims Processing Manual Chapter 17 - Drugs and Biologicals Table of Contents (Rev. 3932, 12-08-17) | www.cms.gov |
| Department of Health and Human Services/ Medicare Learning Network MLN Matters –SE1316 – dose versus units billed | https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNGenInfo/index.html |
| Billing/Coding Policy Guidelines:     First Coast Service Options (FCSO) | https://www.fcso.com/ |
| Billing/Coding Policy Guidelines:     Aetna | https://www.aetna.com/ |
| Billing/Coding Policy Guidelines:     Blue Cross Blue Shield | https://www.floridablue.com/ |
| Billing/Coding Policy Guidelines:     Cigna | https://www.cigna.com/ |